RECEIVED
JAN 2 0 2006
ROBERT ... CLERK
WESTERN ... ANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| PENNY CHOATE | CIVIL ACTION NO. 05-0298 |
| VS. | JUDGE MELANÇON |
| JO ANNE BARNHART, Commissioner<br>Social Security Administration | MAGISTRATE JUDGE METHVIN |

### REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED** that Penny Choate be awarded benefits consistent with an onset date of August 15, 1999.

### *Background*

Born on December 22, 1964, Penny Choate ("Choate") is a 41-year-old claimant who has a GED and has worked in the past as a driving instructor, laborer/iron worker, crane operator/rigger, heavy equipment operator, and outside salesperson.[1] Choate applied for supplemental security income and disability benefits alleging disability as of August 15, 1999 due to fibromyalgia, chronic fatigue syndrome, sleep deprivation, and foot pain.[2] During the course of the administrative proceedings, Choate also alleged disability due to depression. Choate's application was denied on initial review, and an administrative hearing was held on May 1, 2001.[3] The ALJ determined that Choate was not disabled because she could perform her

---

[1] Tr. 106.

[2] Tr. 301-304. In January, 2000, Choate also filed an application for disability insurance benefits. Tr. 62-64.

[3] Tr. 416-458.

past work.[4] The Appeals Council remanded the case to the ALJ with instructions to give consideration to the treating and examining source opinions, further evaluate and obtain additional evidence concerning Choate's mental limitations, and evaluate Choate's complaints of pain.[5] The ALJ held an administrative hearing on February 4, 2003, and issued an unfavorable decision on April 18, 2003.[6] A request for review was denied by the Appeals Council and Choate filed the instant suit appealing the ALJ's decision.

### *Assignment of Errors*

Choate alleges the following errors: 1) the ALJ applied an improper standard with regard to fibromyalgia and chronic fatigue syndrome; 2) the ALJ erred in failing to accord proper weight to the treating and consulting physicians' diagnoses and opinions; and 3) the ALJ erred in assessing Choate's residual functional capacity.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292;

---

[4] Tr. 308-317.

[5] Tr. 318-320.

[6] Tr. 21-37, 459-502.

Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

### *ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

When a mental disability claim is made, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim. Essentially, this procedure substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also

provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings. The Regulations require:

> [T]he ALJ to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment. Furthermore, § 404.1520a(e) provides that the ALJ must document his application of this technique to the claimant's mental impairments.

Satterwhite v. Barnhart, 44 Fed.Appx. 652 (5th Cir. 2002) (unpublished).[7]

In the instant case, the ALJ determined that Choate's fibromyalgia and major depressive disorder were severe impairments.[8] The ALJ assessed Choate's residual functional capacity ("RFC") and concluded that Choate could perform a significant range of light work. Relying on the testimony of a vocational expert, the ALJ concluded that Choate is capable of making an adjustment to work that exists in significant numbers in the national economy, and is therefore not disabled.[9]

---

[7] For a succinct summary of the current law, see Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004):

1. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment.
2. If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation. See C.F.R. §404.1520a(c)(3).
3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings.
4. When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity.

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.* Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

[8] Tr. 23.

[9] Tr. 35-36.

## *Findings and Conclusions*

After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C. § 405(g), the undersigned concludes that the ALJ's findings and conclusions are not supported by substantial evidence in the record.

### **Medical History**

Choate has lengthy medical history. Throughout the 1990s, Choate was examined repeatedly at University Medical Center ("UMC") complaining of chronic neck and back pain.[10] Diagnostic tests were normal.[11] On March 27, 1996, UMC records show that Choate complained of constant neck and back pain that radiated downward.[12] Choate complained of hip and foot pain also. Choate was diagnosed with fibromyalgia.[13] Choate continued to be treated for "musculoskeletal pain" and was prescribed Lortab, Elavil, and Voltaren.[14]

Choate was treated for chronic pain and fibromyalgia by Dr. Edison Ong, a family practitioner.[15] On August 31, 1999, Choate described constant pain in her back, neck, and feet.[16] Choate was prescribed Vioxx and Cetazone. In October, 1999, Dr. Ong noted that Choate had fibromyalgia and insomnia.[17] On October 25, 1999, Dr. Ong reported that Choate:

---

[10] Tr. 118-154.

[11] Tr. 131, 133, 140, 148, 150.

[12] Tr. 130.

[13] Tr. 130.

[14] Tr. 120, 126, 127, 128.

[15] Tr. 171-190, 281-301, 352-372.

[16] Tr. 187.

[17] Tr, 183-184.

> [I]s suffering from Fibromyalgia and Depression. Although the said conditions are not of permanent disability status, but because of the inadequacy of treatment due to her lack of any health insurance, the patient is not yet physically fit to work.[18]

Beginning in May, 2000, Choate was examined monthly by Dr. Ong for fibromyalgia, and insomnia.[19] On May 9, 2001, Dr. Ong referred Choate to Dr. Frederick Talip, an internist.[20] Dr. Talip summarized Choate's complaints as follows:

> Her condition started 13 years ago as onset of posterior neck and mid scapular pain which were felt persistent in character associated with feeling of tiredness in the morning. She tried several non-steroidal, as well as muscle relaxants for these without symptomatic improvement. As years go by, she noted insomnia and worsening of the pain now becoming generalized including anterior chest, shoulders, buttocks, knees and elbows. Over the years, she has had four motor vehicular accidents, two requiring hospitalizations. She tried Elavil for a month for sleep improvement last year, but she said her fact got swollen and didn't really help with sleep and the pain. She also tried several hypnotics namely Ambien and Somata without help. Her symptoms are worse when she is stressed out to do anything strenuous. She also reports that hot bathes don't help her and weather changes also are not affecting her symptoms. Lately she has been bothered mostly by left posterior hip, left elbow and shoulder pain without any joint swelling. She was also diagnosed with plantar fascitis recently. She also has been diagnosed with concomitant depression and has been on Celexa for over a year now tih some improvement of her symptoms accordingly.[21]

Dr. Talip concluded that Choate had fibromyalagia because she had prominent trigger points on exam. Dr. Talip advised Choate to continue her medications and to engage in low impact aerobic exercise.[22]

---

[18] Tr. 181.

[19] Tr. 222-231.

[20] Tr. 254-255.

[21] Tr. 254.

[22] Tr. 255.

On May 31, 2001, Dr. Ong completed a Fibromyalgia Residual Functional Capacity Questionaire indicating that Choate met the criteria for fibromyalgia.[23] Choate's prognosis was poor and she was not a malingerer. Dr. Ong identified the prominent trigger points that supported his diagnoses. Dr. Ong also reported that Choate had the following symptoms:

   Multiple tender points
   Nonrestorative sleep
   Chronic fatigue
   Morning stiffness
   Subjective swelling
   Frequent, severe headaches
   Numbness and tingling
   Anxiety
   Depression

Dr. Ong reported that Choate's pain was severe enough to frequently interfere with her attention and concentration. Choate was incapable of even low stress and "Patient unable to walk or exert any effort without causing more pain. Patient is in severe depression and in constant crying spells."[24] Dr. Ong opined that Choate could walk less than ½ block, she could sit for only 10-15 minutes at a time, and she could stand/walk for less than 2 hours in a workday, she would need to take breaks every 15-30 minutes during a workday, and she could lift less than 10 pounds occasionally, rarely lift 10 pounds, and never lift over 20 pounds. Dr. Ong also indicated that Choate's impairments would cause her to be absent from work more than four times a month.[25]

---

[23] Tr. 282-287.

[24] Tr. 284.

[25] Tr. 287.

Choate continued monthly examinations by Dr. Ong. The last examination of record was on January 15, 2003, and it was noted that Choate was on the following medications: Klonopin (anti-anxiety) Trazodone (anti-depressant) Restoril (anti-anxiety and sleep) Advair (asthma) Skelaxin (muscle relaxant) Celebrex (nonsteroidal anti-inflammatory drug) Buspirone (anti-anxiety).[26]

On April 3, 2000, at the request of Disability Determination Services ("DDS"), Choate was examined by Dr. Brent Allain, a family practitioner.[27] Dr. Allain concluded:

> Diagnoses in this case are that of asthma and depression. Penny did not demonstrate any significant tenderness or discomforts with range of motion or palpation during the exam. She appears physically fit, although she is presently overweight. Continued care for her depression is essential. If today's behavior of emotional instability and depressive affects is the norm, I believe Penny is unemployable at this time. I agree with Dr. Ong's overall assessment of her status and rehabilitative potential. Penny needs to stop smoking and cut back on coffee. Exercise is also essential for well being. These are difficult lifestyle adjustments for anyone, and are often much more difficult for the depressed person.[28]

On April 4, 2000, at the request of DDS, Choate was examined by Dr. Henry LaGarde, a clinical psychologist.[29] Dr. LaGarde's report notes that when she was 19 years old, Choate suffered a self-inflicted stab wound to the abdomen. Dr. LaGarde diagnosed "Major Depressive Disorder, Single Episode, Alcohol Dependencey, Cannabis Dependency, and Polysubstance Abuse, in Remission."

---

[26] Tr. 384. *See* http://www.medicinenet.com

[27] Tr. 192-193.

[28] Tr. 193.

[29] Tr. 195-198.

On June 1, 2000, a Physical Residual Functional Capacity Assessment was conducted by a non-examining medical consultant at the request of the Social Security Administration ("SSA").[30] The consultant concluded that Choate could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk at least 2 hours and sit six hours in a workday.[31] On June 26, 2000, a Psychiatric Review Technique was conducted by SSA.[32] The examiner found that Choate did not have a severe mental impairment.

On February 25, 2003, Choate underwent a consultative psychological evaluation by Dr. Alfred Buxton, a clinical psychologist.[33] Dr. Buxton noted that Choate appeared as if she was in physical distress and discomfort. Choate reported having frequent crying spells. Dr. Buxton concluded:

> Clinically she would present with Major Depressive Disorder, Single Episode, Without Psychotic Features with degree of impairment moderate and prognosis fair; Parent-Child Relational Problem with degree of impairment moderate and prognosis guarded; chronic pain with degree of impairment moderate and prognosis guarded; and a Borderline Personality Disorder. .. If she were fortunate enough to secure gainful competitive employment it is unlikely she would maintain that employment for a brief period of time much less a for a protracted period of time as she simply would not perform in a reliable or dependable fashion. This being secondary to the negative impact of the aforementioned factors, operating in conjunction, on her overall functional status. She does not deal well with the frustration and stress in her everyday living and this would only be compounded by whatever frustration and stress she would encounter in the job setting. One would tend to see exacerbation in overall symptomatology and she probably would respond in a fashion that would work to her own demise. She may be able to establish but might have some difficulty maintaining even

---

[30] Tr. 200-207.

[31] Tr. 201.

[32] Tr. 211-219.

[33] Tr. 397-404.

minimally adequate interpersonal relationships with co-workers and supervisors alike as they would find her overall symptomatology to be somewhat aversive.[34]

Dr. Buxton completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental), stating that Choate had marked restriction in her ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting.[35]

**Standard Applied, Weight Afforded Physicians and Residual Functional Capacity**

Choate argues that the ALJ applied an incorrect standard in assessing her fibromyalgia, which in turn affected his decision to discount the reports of treating and consultative physicians and psychologists. Choate also contends that because the ALJ did not afford proper weight to the physicians' diagnoses and opinions regarding her ability to perform work, the ALJ erred in his residual functional capacity assessment.

The ALJ is entitled to determine the credibility of the examining physicians and medical experts and to weigh their opinions accordingly. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). Although the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." Martinez v. Chater, 64 F.3d 172, 175-176 (5th Cir. 1995), quoting, Moore v. Sullivan, 919 F.2d 901, 905 (5th cir. 1990). "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Id. quoting, Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1987). The ALJ is certainly able to decrease reliance on treating physician testimony for good cause. Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995).

---

[34] Tr. 400.

[35] Tr. 404.

"Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'" Id.

Further, the ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). The ultimate issue of disability is reserved to the Commissioner. The opinion of a treating physician on this issue is not entitled to controlling weight, although it should be given appropriate weight depending on whether it is supported by the medical record. 20 C.F.R. Sec. 416.927 (e) (1988).

In order to be capable of engaging in substantial gainful activity, a person must have a realistic chance of both obtaining as well as holding a job in a *realistic* work setting:

> In [Wingo v. Bowen, 852 F.2d 827 (5th Cir.1988)], this Court held that a determination that a person is capable of engaging in substantial gainful activity depends on a finding not only that the individual has some chance of being hired, but also, that, taking account of the individual's exertional and non-exertional limitations, the individual has a reasonable chance, "once hired, of keeping the job." *Id.* at 831. We noted that "[a] claimant capable of performing sedentary or light work under the guidelines must have the ability to perform the required physical acts day in and day out in the sometimes competitive and stressful conditions in which all people work in the real world." *Id.* (*citing* Allred v. Heckler, 729 F.2d 529, 533 (8th Cir.1984)).

Watson v. Barnhart, 288 F.3d 212 (5th Cir. 2002).

Here, the ALJ addressed the medical evidence and concluded:

> The sum of all such evidence suggests the claimant could reasonably be expected to experience exacerbations of symptoms including pain, with medium to heavy lifting and strenuous activities; however, there is nothing to suggest she lacks the residual functional capacity to perform less demanding work, including sedentary or light, on a consistent basis.

Using this residual functional capacity and relying on the testimony of a vocational expert, the ALJ found that Choate could perform work that existed in significant numbers in the national economy, and therefore she was not disabled.

In making this decision, the ALJ discounted the opinion of Dr. Ong, who found that Choate could not perform work due to her fibromyalgia:

> In arriving at this conclusion, the undersigned considered but is not persuaded by a fibromyalgia residual functional capacity questionnaire completed by Dr. Ong on the request of claimant's attorney on May 31, 2001...
>
> * * *
>
> In this instance, Dr. Ong's reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact limited to the degree indicated, and the doctor did not specifically address this weakness. All laboratory and diagnostic test results cited in support of this assessment were within normal limits. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, including level 7-10 pain, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.
>
> Furthermore, Dr. Ong's opinion is inconsistent with other substantial evidence of record. While he had more than ample opportunity to observe and report functional limitations over the course of treatment, at no time prior to completing this assessment did Dr. Ong report or observe any limitations in the claimant's ability to lift, sit, stand, walk, use the upper extremities, attend, concentrate or tolerate stress. His statement that pain was precipitated by changing weather, fatigue, movement/overuse and stress is inconsistent with the claimant's frequent reports that pain was made worse by nothing. Limitations in standing and walking, including inability to walk or exert any effort without causing more pain, are clearly inconsistent with the fact he encouraged the claimant to walk for exercise.[36]

---

[36] Tr. 29-30.

The ALJ also concluded that since other physicians and the DDS medical consultant who completed the Physical Residual Functional Capacity Assessment in 2000 did not place similar restrictions on Choate's ability to perform work duties, Dr. Ong's opinion was faulty.

The ALJ's basis for discounting Dr. Ong's report was flawed. Dr. Ong treated Choate for over three years and determined that she could not sustain the necessary exertional level required to perform work activity on a consistent basis. Dr. Ong based his diagnosis not only on Choate's subjective complaints which were consistent with fibromyalgia, but also on the fact that Choate had several trigger points indicative of fibromyalgia. Further, SSA's own consulting physician, Dr. Allain, agreed with Dr. Ong after an examination of Choate. The only report of record indicating that Choate could perform work was the DDS non-examining medical consultant's report, who reviewed Choate's file in 2000, which was prior to Dr. Ong's report and the report of Dr. Allain. Additionally, the ALJ's suggestion that Dr. Ong had failed to restrict Choate from work activity prior to the fibromyalgia questionnaire is incorrect. On October 25, 1999, Dr. Ong found that Choate was "not yet physically fit to work" because of fibromyalgia and depression.[37]

Moreover, the ALJ erred in failing to understand the nature of fibromyalgia. The ALJ discounted Dr. Ong's opinion because it was based primarily on Choate's subjective complaints. In fact, fibromyalgia is a self-reported, chronic condition causing "long-term but variable levels of muscle and joint pain, stiffness and fatigue." Brosnahan v. Barnhart, 336 F.3d 671, 672 n. 1 (8th Cir.2003). The disease is "diagnosed entirely on the basis of patients' reports and other symptoms." Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir.2004). The American College of Rheumatology Guidelines which outline clinical signs and symptoms supporting a diagnosis of

---

[37] Tr. 181.

fibromyalgia, include "primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body." Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir.2003). The Seventh Circuit has summarized fibromyalgia as follows:

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and--the only symptom that discriminates between it and other diseases of a rheumatic character--multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996) (emphasis added).

Obviously, the only way for a physician to know that someone is suffering pain all over, fatigue, disturbed sleep, and stiffness is for the patient to report these symptoms. Accordingly, the fact that Dr. Ong relied on Choate's subjective complaints cannot form the basis for the ALJ's determination to discount the physician's opinion. Further, the medical evidence shows that both Dr. Ong and Dr. Talip found that Choate had fibromyalgia because she had the requisite trigger points, and Dr. Allain, who was the DDS consultative examiner, stated in 2000 that he agreed with Dr. Ong's assessment of Choate's status.[38]

This same rational applies to the ALJ's decision to discount Choate's credibility and her allegations of disabling pain. The ALJ stated:

> In this instance, the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision. Records from treating and examining sources show she does have tender points consistent with fibromyalgia but no objective evidence of limited range of motion of any of the areas allegedly affected, atrophy, altered gait, spasm or sensory/motor deficits. The fact that several doctors, including Dr. Ong and Dr. Talip, recommended low

---

[38] Tr. 192-193.

impact aerobic exercise, including walking, and Dr. Allain went so far as to state exercise was essential for her well being, suggests they consider her capable of being more active than she would have one believe.[39]

The ALJ went on to discredit Choate because her complaints of pain have been "vague and inconsistent" because her pain description "varies from achy, shooting and tugging, to sharp generalized, to burning all over."[40] The ALJ also noted that Choate's sometimes indicated that pain was made worse by activity, while at other times she has said that nothing made the pain worse. The ALJ noted that Choate has not been hospitalized for pain, and she has not undertaken alternative medical therapies like physical therapy.

The ALJ's credibility determination was rooted in the fact that the medical records do not contain objective evidence supporting Choate's allegations of pain. As discussed above, however, the very nature of fibromyalgia precludes such objective evidence, except for trigger points, which she has. Moreover, fibromyalgia involves "pain all over," which is clearly present in this case – Choate's description of her pain varies, however, she is consistent in her allegations of chronic pain throughout her body. Moreover, she has a well-documented history of insomnia, which is a symptom of fibromyalgia. Further, the fact that physicians have recommended that Choate engage in low impact aerobic activity has no bearing on whether she can engage in ongoing work activity day-in and day-out.

The undersigned concludes that the ALJ did not have good cause to discount Dr. Ong's opinion that because of her fibromyalgia, Choate can walk less than ½ block, sit only 10-15 minutes at a time, stand/walk for less than 2 hours in a workday, needs to take breaks every 15-

---

[39] Tr. 27.

[40] Tr. 27.

30 minutes during a workday, and she can lift less than 10 pounds occasionally, rarely lift 10 pounds, as well as his opinion that Choate's impairments would cause her to be absent from work more than four times a month.[41] Likewise, the ALJ erred in discounting Choate's credibility regarding her disabling pain. The overwhelming evidence of record shows that Choate's condition is of a chronic and severe nature, which prohibits her from performing sustained activity. Considering this, and the fact that the vocational expert testified that employers would not tolerate an employee's frequent absences or rest periods,[42] the undersigned finds that the ALJ's determination that Choate could perform work that exists in significant numbers is not supported by substantial evidence.

### *Conclusion*

Considering the foregoing, it is recommended that case be **REVERSED** and that plaintiff be awarded benefits consistent with an onset date of August 15, 1999.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P.**

---

[41] Tr. 287.

[42] Tr. 497-499.

6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on January 20th, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

SENT
1-20-06
cs
mem
TLM / RJ